## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

KEVIN DOHERTY,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )          Civil Action No. 3:19CV420–HEH
                                        )
CORIZON HEALTH, *et al.*,               )
                                        )
        Defendants.                     )

### <u>MEMORANDUM OPINION</u>
### (Granting Motions to Dismiss)

Kevin Doherty, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed

this civil rights action alleging that, while he was an inmate at the Arlington County

Detention Facility ("ACDF"), Defendants[1] provided him with constitutionally inadequate

medical care for his deep vein thrombosis ("DVT"). (ECF No. 80 at 1.)[2] The matter is

now before the Court on two Motions to Dismiss: the first filed by Arlington County on

February 3, 2021 (ECF No. 84), and the second filed by Corizon, Hyman, Nurse Burris,

and PA Mallin on February 26, 2021 (ECF No. 91). Doherty has responded to each of

---

[1] Doherty names as defendants: Corizon Health ("Corizon"), "the medical service provider for inmates at ACDF;" Corizon's Chief Executive Officer, James Hyman ("Hyman"); Richard Ashby ("Dr. Ashby"), "the medical doctor tasked with providing care [for] inmates at ACDF;" Danbi Mallin ("PA Mallin"), a physician's assistant at ACDF; Majorie Burris ("Nurse Burris"), a nurse at ACDF; Beth Arthur ("Sheriff Arthur"), the Sheriff of Arlington County; and Arlington County, Virginia, the municipality in which the ACDF is located. (ECF No. 80 at 1–2.) In a separate Memorandum Order, the Court dismissed all claims against the Virginia Department of Corrections. (*See* ECF No. 81.)

[2] The Court employs the numbering and pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the parties' submissions and removes emphasis and symbols utilized by the parties unless otherwise noted.

these respective Motions to Dismiss.  For the reasons set forth below, the Motions to Dismiss will be granted.[3]

## I. STANDARD FOR A MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.*  Instead, a plaintiff must

---

[3] Sheriff Arthur has also filed a Motion to Dismiss.  (ECF No. 87.)  That motion will be addressed separately, as Doherty has requested, and been granted, an enlargement of time to file his response. (*See* ECF Nos. 107, 109.)

allege facts sufficient "to raise a right to relief above the speculative level," *id.*, stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS AND CLAIMS

Proceeding on his Third Particularized Complaint ("Complaint," ECF No. 80), Doherty alleges that:[4]

> On 3/18/19, while incarcerated at the ACDF, Plaintiff sought emergency medical care with Defendant Ashby, believing he had a DVT in

---

[4] The Court omits paragraph numbers, references to secondary sources, and case authority in quotations to Doherty's Complaint unless otherwise noted.

his left calf.  On 4/23/19, some 35 days later, a DVT was confirmed in Plaintiff's left calf.

Plaintiff asserts the delay in treatment led to further medical complications, including a PE[5] lung clot and that this PE has caused him pain, suffering and diminished lung capacity.

Plaintiff further asserts that multiple Corizon staff treated him with deliberate indifference (DI) to his serious medical needs, that he personally observed multiple other cases of Corizon staff treating ACDF inmates with DI, and that Corizon Medical records have been altered post medical encounter to cover–up the DI shown by Corizon staff.

(ECF No. 80 at 2–3.)

In the section of his Complaint, entitled "§ 1983 Constitutional Violations,"

Doherty goes on to allege that:

DI towards an inmate's serious medical needs has been held to be a violation of an inmate's 8th Amendment[6] right to be free of cruel and unusual punishment.

A delay in treatment can be enough to prove DI.

A plaintiff must also show "substantial harm," which may be satisfied by proving a "life long handicap . . . or considerable pain."

Plaintiff seeks emergency medical attention for a DVT on 3/18/19 from Corizon Staff, makes multiple requests [and] pleads to have his serious medical condition properly addressed.  Finally, 35 days later, on 4/22/19, DEF Ashby orders the test that confirms Plaintiff's DVT.

Plaintiff has minimally stated a colorable claim of 8th Amendment violation by DEF Ashby, and may present enough for a reasonable juror to infer DI by DEF Ashby to his serious medical needs which caused him considerable pain [and] potentially life–long handicap.

---

[5] Doherty does not define the term "PE" anywhere in his Complaint.  Nevertheless, affording Doherty the benefit of a liberal construction, the Court understands this term to be a reference to the medical condition known as a pulmonary embolism ("PE").  According to the Centers for Disease Control and Prevention, a PE is the "most serious complication of DVT," which can occur when a blood clot caused by the DVT "breaks off and travels through the blood stream to the lungs, causing a blockage."  *See* CTRS. FOR DISEASE CONTROL, *What is Venous Thromboembolism?*, (Feb. 7, 2020) https://www.cdc.gov/ncbddd/dvt/facts.html (last visited May 27, 2021).

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

Plaintiff further notes another Corizon employee at ACDF who treated him with DI, Corizon Nurse Burris.

(*Id.* at 3–4 (omission in original).)

Finally, in the section of his Complaint, entitled "§ 1985 Constitutional Violations," Doherty alleges that:

42 U.S.C. § 1985 states that 2 or more persons who are motivated by a specific class–based invidiously discriminatory animus to deprive the Plaintiff of the equal enjoyment of rights secured by the law to all and which results in injury to the Plaintiff as a consequence of an overt act committed by defendants in connection with the conspiracy is a violation of § 1985. That both DEFs Ashby and Burris display clear DI toward Plaintiff in separate events could lead a reasonable juror to infer coordination between the two or more of Corizon staff to deprive ACDF inmates the right to proper medical attention. That Plaintiff asserts this is Corizon's MO at ACDF [and] further supports a colorful claim that a concerted effort to deprive legally protected rights of inmates [at] ACDF is occurring or at least did occur.

(*Id.* at 5.)

Relying on the foregoing allegations, Doherty demands relief upon the following grounds:

| Claim One | Dr. Ashby "had a duty to treat [Doherty's] serious medical need with proper medical care, which he failed to do when he intentionally [and] without medical prudence, delayed . . . testing [for and] treatment of [Doherty's] . . . DVT . . . [for] 35 days." (*Id.* at 5–6.)[7] |
|---|---|
| Claim Two | Nurse Burris "had a duty to consider [Doherty's] serious medical needs, not disregard them as she did." (*Id.* at 6.) |
| Claim Three | PA Mallin "saw [Doherty] on 3/30/2019 . . . and 6/22/2019 . . . and treated [Doherty's] serious medical need with D[eliberate] I[difference]." (*Id.*) |

---

[7] Dr. Ashby has filed an Answer. (ECF No. 90.) Accordingly, Claim One is not presently before the Court and will not be addressed herein.

Claim Four        Corizon "had a duty to ensure qualified person[s] . . . staffed
                  ACDF. [Corizon] and its CEO Hyman failed in their duties
                  and are liable . . . to [Doherty]." (*Id.*)

Claim Five        Sheriff Arthur and Arlington County "had a duty to [Doherty]
                  to ensure he was provided proper medical care. When
                  [Doherty] did not receive it [at] ACDF they failed their duty
                  and are liable [to Doherty]." (*Id.*)

Claim Six         Dr. Ashby, PA Mallin, Nurse Burris, and Corizon "further are
                  liable for conspiring to violate [Doherty's] right to proper
                  medical attention and then attempting to cover those
                  violations up after the fact." (*Id.* at 7.)

### III. ANALYSIS

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). Instead, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, to survive a motion to dismiss, a plaintiff must "affirmatively [allege] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations").

6

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

7

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

To state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. "Where a deliberate indifference claim is predicated on a delay in medical care, . . . there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018)

8

(emphasis in original) (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

As discussed below, Doherty fails to state an Eighth Amendment claim as to Nurse Burris, PA Mallin, Hyman, Corizon, or the Arlington County.

### A. Claim Two

In Claim Two, Doherty alleges that Nurse Burris "had a duty to consider [his] serious medical needs, not disregard them as she did." (ECF No. 80, at 6.) While Doherty generally avers that Nurse Burris "treated him with D[eliberate] I[ndifference]" (*id.* at 4), and "display[ed] clear D[eliberate] I[ndifference] towards [him]" (*id.* at 5), he fails to provide any specific factual allegations about his interactions with Nurse Burris.

Doherty's vague assertions against Nurse Burris are "no more than conclusions, [and] are not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. Similarly, Doherty's ambiguous references to the actions of unidentified Corizon "staff," are insufficient to state a claim against Nurse Burris. *See* ECF No. 80 at 3–4; *Davis v. Ruby*, No. 3:13CV288, 2015 WL 501926, at *5 (E.D. Va. Feb. 5, 2015) (explaining that "[v]ague references to a group of defendants, without specific allegations tying the individual defendants to the alleged unconstitutional conduct," fail to support a claim for relief against the individual defendants (quoting *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008))).

Simply put, Doherty has failed to plead sufficient facts to warrant an inference that Nurse Burris was aware of an excessive risk to Doherty's health and safety, much less that she ignored that risk. *See Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129

9

F.3d at 340 n.2).  Thus, Doherty has failed to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683).  Accordingly, Claim Two will be dismissed.

### B.  Claim Three

In Claim Three, Doherty alleges that PA Mallin "saw [Doherty] on 3/30/2019 . . . and 6/22/2019 . . . and treated [Doherty's] serious medical need with D[eliberate] I[ndifference]." (ECF No. 80 at 6.)  However, Doherty again fails to provide any specific details concerning his interactions with PA Mallin on either of these dates.  Doherty's allegations against PA Mallin—like his allegations against Nurse Burris—are vague and conclusory, and "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Therefore, Claim Three will likewise be dismissed.

### C.  Claim Four

In Claim Four, Doherty alleges that Corizon "had a duty to ensure qualified person[s] . . . staffed ACDF." (ECF No. 80 at 6.)  Doherty goes on to allege that [Corizon] and its CEO Hyman failed in their duties and are liable . . . to [Doherty]." (*Id.*)

#### 1.  Corizon

A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted).  Instead, "a private corporation is liable under § 1983 only when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted).  A

10

plaintiff must, "identify the offending [corporate] policy [or custom] with precision."
*Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Here, Doherty fails to identify an
official policy or custom of Corizon that he maintains led to the alleged deprivation of his
rights.[8] Accordingly, Claim Four will be dismissed as to Corizon.

### 2. Hyman

Doherty's claim against Hyman, who is the CEO of Corizon, is even more tenuous
than his claim against Corizon. Doherty does not allege that Hyman instituted any
official policy or custom that deprived Doherty of his rights. Indeed, Doherty fails to
allege any specific action on the part of Hyman whatsoever, much less personal conduct
that could plausibly suggest that Hyman had any involvement in the alleged violation of
Doherty's rights. *See Wright*, 766 F.2d at 850 (citation omitted); *Trulock*, 275 F.3d at
402. Accordingly, Claim Four will be dismissed as to Hyman.

### D. Claim Five

In Claim Five, Doherty alleges that Sheriff Arthur and Arlington County "had a
duty to [Doherty] to ensure he was provided proper medical care." (ECF No. 80 at 6.)
When a plaintiff brings a § 1983 claim against a local government entity such as
Arlington County, liability attaches only if that municipality undertakes "an official
policy or custom" that "causes an unconstitutional deprivation of the plaintiff's rights."
*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citing *Monell v. Dep't of*

---

[8] Doherty vaguely contends that "Corizon's M[odus] O[perandi] at ACDF" is to "deprive ACDF
inmates the right to proper medical attention." (ECF No. 80 at 5.) This position seems to be
premised on Doherty's belief that "[Dr.] Ashby and [Nurse] Burris display[ed] clear D[eliberate]
I[ndifference] towards [him] in separate events." (*Id.*) These allegations are insufficient to
identify an official policy or custom that violated Doherty's rights. Doherty's allegations
concerning "Corizon's MO" amount to "no more than [a] conclusion[]," and are "not entitled to
the assumption of truth." *See Iqbal*, 556 U.S. at 679.

*Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).  A policy or custom for which a

municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that
>     "manifest[s] deliberate indifference to the rights of citizens"; or[,]
> (4) through a practice that is so "persistent and widespread" as to constitute
>     a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (first alteration in original) (quoting

*Carter*, 164 F.3d at 217).

Arlington County correctly asserts that it is not liable for any policy or custom

affecting Doherty's detention at the ACDF because Arlington County has no control over

the facility's policies and practices.  (ECF No. 85 at 2–3.)  Rather, under Virginia law,

sheriffs are responsible for the day-to-day operations and maintenance of local jails, such

as the ACDF.  *See* Va. Code § 53.1–116 *et seq.*

Courts have repeatedly held that a county is not liable under § 1983 for the actions

of its sheriff in the administration of its jail because, "under the law of Virginia those

actions do not embody an official policy of the [county]."  *Strickler*, 989 F.2d at

1390 (relying on Virginia cases addressing county liability to hold that the City of

Richmond cannot face *Monell* liability for the sheriff's administration of the city jail); *see*

*also Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("As the county has no control

over policy within the jail, it bears no concomitant responsibility." (citing *Monell*, 436

U.S. at 694)).  Because Arlington County has no control over policy at the ACDF, in this

instance, "it bears no concomitant responsibility."  *Grayson*, 195 F.3d at 697.

Accordingly, Claim Five will be dismissed as to Arlington County.

### E.  Claim Six

In Claim Six, Doherty alleges that Dr. Ashby, PA Mallin, Nurse Burris and Corizon "are liable for conspiring to violate [Doherty's] right to proper medical attention and then attempting to cover these violations up after the fact," in violation of 42 U.S.C. § 1985(3).  (ECF No. 80 at 7.)  Doherty posits rather simplistically that because Dr. Ashby and Nurse Burris "display[ed] clear d[eliberate] i[ndifference] toward [Doherty] in separate events," he believes a "reasonable juror [could] infer coordination between th[ose] two, or more of Corizon's staff . . . ."  (*Id.* at 5.)  Doherty fails to allege facts with the requisite level of specificity to plead a § 1985(3) claim.

To establish a civil conspiracy, Doherty must allege facts indicating that Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right."  *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)).  To this end, Doherty must plead facts that plausibly suggest "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."  *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)).  "Where the complaint makes only conclusory allegations of a conspiracy . . . and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint."  *Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996) (citations omitted).

Here, Doherty offers nothing more than conclusory allegations about the existence of a conspiracy. Conspicuously absent from Doherty's Complaint are any facts that plausibly suggest that Dr. Ashby, PA Mallin, Nurse Burris and Corizon "formed any type of agreement or acted in concert to injure him." *Id.* "The mere fact that each of these actors [may have] played a part in the events is not sufficient to show a type of unity of purpose." *Id.*

Simply put, there are no factual allegations in Doherty's Complaint such that the Court could infer that Dr. Ashby, PA Mallin, Nurse Burris, and Corizon came together and collectively agreed to work together to violate Doherty's rights. As such, Doherty has again failed to allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, Claim Six will be dismissed.

## IV. CONCLUSION

For the aforementioned reasons, the Motions to Dismiss filed by Arlington County (ECF No. 84) and the Motion to Dismiss jointly filed by Corizon, Hyman, Nurse Burris, and PA Mallin (ECF No. 91) will be granted. Claims Two, Three, Four, and Six will be dismissed. Claim Five will be dismissed as to Arlington County. The Motion to Strike (ECF No. 111) will be denied as moot.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: May 28, 2021
Richmond, Virginia

14