IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEVIN DOHERTY,           )
                         )
    Plaintiff,       )
                         )
v.                       )   Civil Action No. 3:19CV420–HEH
                         )
CORIZON HEALTH, *et al.*,)
                         )
    Defendants.      )

## **MEMORANDUM OPINION**
### (Granting Motion to Dismiss)

Kevin Doherty, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights action alleging that, while he was an inmate at the Arlington County Detention Facility ("ACDF"), Defendants[1] provided him with constitutionally inadequate medical care for his deep vein thrombosis ("DVT"). (ECF No. 80 at 1.)[2] The matter is now before the Court on Sheriff Arthur's Motion to Dismiss. (ECF No. 87.) Doherty has filed a response. (ECF No. 119.) For the reasons set forth below, the Motion to Dismiss will be granted.

---

[1] Doherty names as defendants: Corizon Health ("Corizon"), "the medical service provider for inmates at ACDF;" Corizon's Chief Executive Officer, James Hyman ("Hyman"); Richard Ashby ("Dr. Ashby"), "the medical doctor tasked with providing care [for] inmates at ACDF;" Danbi Mallin ("PA Mallin"), a physician's assistant at ACDF; Majorie Burris ("Nurse Burris"), a nurse at ACDF; Beth Arthur ("Sheriff Arthur"), the Sheriff of Arlington County; and Arlington County, Virginia, the municipality in which the ACDF is located. (ECF No. 80 at 1–2.) By Memorandum Opinion and Order entered on May 28, 2021, the Court dismissed the claims against Corizon, Hyman, PA Mallin, Nurse Burris, and Arlington County. (ECF Nos. 117–18.) By a prior Memorandum Order, the Court dismissed all claims against the Virginia Department of Corrections. (ECF No. 81.)

[2] The Court employs the pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions; corrects the spelling, punctuation, and capitalization in the parties' submissions; and removes emphasis and symbols utilized by the parties, unless otherwise noted.

## I. STANDARD FOR A MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (second alteration in original). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS AND CLAIMS

Proceeding on his Third Particularized Complaint ("Complaint," ECF No. 80), Doherty alleges that:[3]

> On 3/18/19, while incarcerated at the ACDF, Plaintiff sought emergency medical care with Defendant Ashby, believing he had a DVT in his left calf. On 4/23/19, some 35 days later, a DVT was confirmed in Plaintiff's left calf.
> Plaintiff asserts the delay in treatment led to further medical complications, including a PE[4] lung clot and that this PE has caused him pain, suffering and diminished lung capacity.

---

[3] The Court omits paragraph numbers, references to secondary sources, and case authority in quotations to Doherty's Complaint, unless otherwise noted.

[4] Doherty does not define the term "PE" anywhere in his Complaint. Nevertheless, affording Doherty the benefit of a liberal construction, the Court understands this term to be a reference to the medical condition known as a pulmonary embolism ("PE").

3

> Plaintiff further asserts that multiple Corizon staff treated him with deliberate indifference (DI) to his serious medical needs, that he personally observed multiple other cases of Corizon staff treating ACDF inmates with DI, and that Corizon Medical records have been altered post medical encounter to cover–up the DI shown by Corizon staff.

(ECF No. 80 at 2–3.)

In the section of his Complaint, entitled "§ 1983 Constitutional Violations," Doherty goes on to allege that:

> DI towards an inmate's serious medical needs has been held to be a violation of an inmate's 8th Amendment[5] right to be free of cruel and unusual punishment.
> A delay in treatment can be enough to prove DI.
> A plaintiff must also show "substantial harm," which may be satisfied by proving a "life long handicap . . . or considerable pain."
> Plaintiff seeks emergency medical attention for a DVT on 3/18/19 from Corizon Staff, makes multiple requests [and] pleads to have his serious medical condition properly addressed. Finally, 35 days later, on 4/22/19, DEF Ashby orders the test that confirms Plaintiff's DVT.
> Plaintiff has minimally stated a colorable claim of 8th Amendment violation by DEF Ashby, and may present enough for a reasonable juror to infer DI by DEF Ashby to his serious medical needs which caused him considerable pain [and] potentially life–long handicap.
> Plaintiff further notes another Corizon employee at ACDF who treated him with DI, Corizon Nurse Burris.

(*Id.* at 3–4 (omission in original).)

Finally, in the section of his Complaint, entitled "§ 1985 Constitutional Violations," Doherty alleges that:

> 42 U.S.C. § 1985 states that 2 or more persons who are motivated by a specific class–based invidiously discriminatory animus to deprive the Plaintiff of the equal enjoyment of rights secured by the law to all and which results in injury to the Plaintiff as a consequence of an overt act committed by defendants in connection with the conspiracy is a violation of § 1985. That both DEFs Ashby and Burris display clear DI toward Plaintiff

---

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

4

in separate events could lead a reasonable juror to infer coordination between the two or more of Corizon staff to deprive ACDF inmates the right to proper medical attention. That Plaintiff asserts this is Corizon's MO at ACDF [and] further supports a colorful claim that a concerted effort to deprive legally protected rights of inmates [at] ACDF is occurring or at least did occur.

(*Id.* at 5.)

The following grounds for relief remain before the Court:

| | |
|---|---|
| Claim One | Dr. Ashby "had a duty to treat [Doherty's] serious medical need with proper medical care, which he failed to do when he intentionally [and] without medical prudence, delayed . . . testing [for and] treatment of [Doherty's] . . . DVT . . . [for] 35 days." (*Id.* at 5–6.)[6] |
| Claim Five | Sheriff Arthur "had a duty to [Doherty] to ensure he was provided proper medical care. When [Doherty] did not receive it [at] ACDF they failed their duty and are liable [to Doherty]." (*Id.*) |

### III. ANALYSIS

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). Instead, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

---

[6] Dr. Ashby has filed an Answer. (ECF No. 90.) Accordingly, Claim One is not presently before the Court and will not be addressed herein.

5

violated the Constitution." *Id.* Thus, to survive a motion to dismiss, a plaintiff must "affirmatively [allege] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations").

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "[T]o demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his

6

person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

To state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848,

7

851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. "Where a deliberate indifference claim is predicated on a delay in medical care, . . . there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

In Claim Five, Doherty alleges that Sheriff Arthur "had a duty to [Doherty] to ensure he was provided proper medical care." (ECF No. 80 at 6.) However, Doherty fails to allege any specific personal action or conduct on the part of Sheriff Arthur that could plausibly suggest that she had any direct involvement in the alleged violation of Doherty's rights. *See Wright*, 766 F.2d at 850 (citation omitted); *Trulock*, 275 F.3d at 402. To the extent that Doherty seeks to hold Sheriff Arthur liable under a theory of *respondeat superior*, his claim clearly runs afoul of established precedent and must be dismissed. *See Iqbal*, 556 U.S. at 676.

Doherty has also failed to allege that Sheriff Arthur instituted any official policy or custom that could possibly give rise to liability in this situation. An official policy or custom can arise in four ways:

   (1) through an express policy, such as a written ordinance or regulation;
   (2) through the decisions of a person with final policymaking authority;
   (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or[,]
   (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (first alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). A plaintiff must, "identify the offending [official] policy [or custom] with precision." *Carter*, 164 F.3d at 218. Here, however, Doherty fails to identify any official policy or custom of Sheriff Arthur that he maintains led to the alleged deprivation of his rights.[7]

Simply put, Doherty has failed to plead sufficient facts to warrant an inference that Sheriff Arthur was aware of an excessive risk to Doherty's health and safety, much less that she ignored that risk. *See Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2). Accordingly, Claim Five will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Motion to Dismiss filed by Sheriff Arthur (ECF No. 87) will be granted. Claim Five will be dismissed. Sheriff Arthur's Motion for an Extension of Time (ECF No. 115) will be denied as moot.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: June 16, 2021
Richmond, Virginia

---

[7] Doherty vaguely contends that "Corizon's M[odus] O[perandi] at ACDF" is to "deprive ACDF inmates the right to proper medical attention." (ECF No. 80, at 5.) This allegation is "no more than [a] conclusion[]," and is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Moreover, this vague statement is insufficient to identify an official policy or custom that violated Doherty's rights, much less one that was implemented by Sheriff Arthur.

9